## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

URSULA S. THOMAS COLE,

        Plaintiff,

v.

PRECISION AVIATION CONTROLS,
JAMES ROBERTSON, and SUSAN
THOMPSON

        Defendants.

Case No. 6:19-CV-01295-KHV

## PLAINTIFF'S OPPOSING MEMORANDUM IN SUPPORT OF RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Ursula S. Thomas Cole ("Plaintiff"), by and through her attorneys, and pursuant to Fed. R. Civ. P. 56 and D. Kan. R. 56.1 who states the plethora of material facts in genuine dispute preclude the issuance of a Summary Judgment. Defendant's stated reasons to support Plaintiff's firing are blatantly pretextual. Plaintiff further states as follows:

### MATERIAL FACTS WHERE GENUINE ISSUES REMAIN

1. PAC has been in trouble for not following FAA guidelines. *Plaintiff's Exhibit 2 – (a) Thompson Depo, 79, 82-83; 84-86; 89-91; (b) Thompson Depo Exhibit 1; (c) Thompson Depo Ex 2; (d) Barker Depo, 58: 18-25; 59:1-18; Plaintiff's Exhibit 3 – Cole Depo, 103:10-22.* **Disputing Defendants' Uncontroverted Fact Number Four.**

2. There is evidence of record that PAC violated the AWARS agreement. *Plaintiff's Exhibit 2 – (a) Thompson Depo, 79, 82-83; 84-86; 89-91; (b) Thompson Depo Exhibit 1; (c) Thompson Depo Ex 2; (d) Barker Depo, 58: 18-25; 59:1-18.* **Disputing Defendants' Uncontroverted Fact Number Four.**

3.    This case abounds with evidence that Defendants manipulated inspection processes and guidelines to increase their bottom line. *Plaintiff's Exhibit 4 - Thompson Depo, 90:9-25; 91:1-8; Thompson Depo Exhibit 6.* **Disputing Defendants' Uncontroverted Fact Number Four.**

4.    Defendants cannot be an equal opportunity employer because Defendant Thompson admitted that she has not received human resources training; or diversity, equity and inclusion training. Defendant Thompson also testified that she did not have any information concerning an affirmative action plan which is required as a federal contractor. Since their inception as PAC, Defendant Thompson indicated that she has only attended a helicopter association meeting. *Plaintiff's Exhibit 5 - Thompson Depo, 43: 13-25; 44:1-20; 47:1-16; 14-24.* **Disputing Defendants' Uncontroverted Fact Number Six.**

5.    Additionally, Defendant Thompson testified that she did not even recall any discussions with Defendant Robertson or Precision Aviation Group ("PAG") about equal employment opportunity.  Defendant Thompson could not articulate how PAC implements or practices equal employment. *Plaintiff's Exhibit 6 - Thompson Depo, 51:1-25; 52:1-10.* **Disputing Defendants' Uncontroverted Fact Number Six.**

6.    Current PAC employee Charles Barker courageously testified that he was concerned about retaliation as a result of his deposition testimony. He further testified that he was treated different than his white coworkers. Barker stated that, as recently as November 2020, Defendants sent an email which was "uncalled for" and motivated by his race as an African-American. He stated that the email made him uncomfortable. *Plaintiff's Exhibit 7 - Barker Depo, 18:6-9; 62:21-24; 63:1-5.* **Disputing Defendants' Uncontroverted Fact Number Four.**

2

7.    From January 2016 to May 31, 2016, Plaintiff reported the discrimination which took form in racist comments by Aaron Garner, Jason Turner and Izak. *Plaintiff's Exhibit 8 – Cole Depo 76:16-25.* Plaintiff reported the racist behavior to her supervisor, Daniel Thorenson. *Plaintiff's Exhibit 9 – Cole Depo 78:11-25.* **Disputing Defendants' Uncontroverted Fact Number Six.**

8.    Defendant Thompson blamed Plaintiff for the racial discrimination and harassment and told her that she shouldn't have started eating lunch in the breakroom. *Plaintiff's Exhibit 10 - Cole Depo, 79:6-12.* **Disputing Defendants' Uncontroverted Fact Number Six.**

9.    Because she was qualified to perform her assigned job duties, within months of her hire, Defendants promoted Plaintiff to Specialized Team Member 5H. At the time of her unlawful termination, Plaintiff held the position of Specialized Team Member 5H and her designation is listed on the top line of her Personal Improvement Plan (PIP). *Plaintiff's Exhibit 11 -Thompson Depo, 69:19-25; Plaintiff's Exhibit 12 – Personal Improvement Plan, dated May 24, 2016 (also Thompson Deposition Exhibit 2).* **Disputing Defendants' Uncontroverted Fact Number Nine.**

10.   Defendant Thompson did not agree that an African-American female who does the same job as a white male should be paid the same. *Plaintiff's Exhibit 13 - Thompson Depo 46:2-3; 48:1-10.* **Disputing Defendants' Uncontroverted Fact Number Eleven.**

11.   Defendants refused to provide Plaintiff a raise. *Plaintiff's Exhibit 14 - Cole Depo 55:23-25; 56:1-11.* **Disputing Defendants' Uncontroverted Fact Number 16.**

12.   Until the date of her termination, Plaintiff provided her employer with excellent work. Defendant utilized Plaintiff's skill to perform all commercial side rush orders. More importantly, Defendants depended on Plaintiff to train other PAC employees. *Plaintiff's*

*Exhibit 15 – Cole Depo 96:1-17; Plaintiff's Exhibit 16(a) -Production Log of July 27, 2016 through February 3, 2017; Plaintiff's Exhibit 33 – Aviation Controls Inc. Employee Training Record*. **Disputing Defendants' Uncontroverted Fact Number 21.**

13.    Plaintiff was such a stellar employee she initially survived a Reduction in Work Force. Even Sherry Turner, an inspector and ten-year employee, was terminated along with several other long term employees. *Plaintiff's Exhibit 17 – Cole Depo 63:12-18.* **Disputing Defendants' Uncontroverted Fact Number 22.**

14.    Defendants falsely documented that "recent units that had parts that were scrapped in which it depleted the unit's margin." The units cited in the PIP were inspected by PAC employee, Judy Voths. Daniel Thorenson claimed to have mistakenly included these units, and yet he never retracted or corrected his mistake. *Defendant's Exhibit B – Thorensen Declaration, Paragraph 34; Plaintiff's Exhibit 18 - Thompson Depo; 67:25; 68:1-18; 72:1-18; Plaintiff's Exhibit 12 – Personal Improvement Plan.* The PIP was a complete and utter fabrication. **Disputing Defendants' Uncontroverted Fact Number 22.**

15.    As part of the pretextual set-up to justify their discriminatory behavior, Defendant Thompson claimed that she received complaints about parts consistently not cleaned and levers which are missing inserts. But, Plaintiff's job duties did not include cleaning flyweight pin holes. Levers do not have inserts. *Plaintiff's Exhibit 19 –Email from Daniel Thorenson to Susan Thompson, dated May 18, 2016; Plaintiff's Exhibit 1 – Declaration of Ursula Thomas Cole, Paragraph 4.* **Disputing Defendants' Uncontroverted Fact Number 25.**

16.    Defendant Thompson was aware that her co-worker Aaron Garner harassed Plaintiff but her company refused to let her do anything about it. *Plaintiff's Exhibit 20 - Cole Deposition 19:22-25; 20: 1-22.* **Disputing Defendants' Uncontroverted Fact Number 25.**

17.    Defendants encouraged its employees to lie and accuse Plaintiff of telling offensive stories. *Plaintiff's Exhibit 21 - Cole Depo, 85:11-20. Plaintiff's Exhibit 22 - Cole Depo 86:4-25; 87:1-14; Plaintiff's Exhibit 23 - Cole Depo, 88:9-23.* **Disputing Defendants' Uncontroverted Fact Number 24.**

18.    Defendants would have this Court believe that Plaintiff both threatened violence against her coworkers and yet excessively visited with these workers. *Plaintiff's Exhibit 12 - PIP dated May 24, 2016.* **Disputing Defendants' Uncontroverted Fact Number 24.**

19.    Defendants prepared a false Personal Improvement Plan dated May 24, 2016 in its attempt to establish pretextual reasons to justify its discriminatory and illegal employment practices. *See Plaintiff's Exhibit 12 – Personal Improvement Plan dated May 24, 2016, and Plaintiff's Exhibit 1 – Declaration of Ursula Thomas Cole.* **Disputing Defendants' Uncontroverted Fact Number 25.**

20.    Contrary to their claim, Defendants did not conduct a meeting to discuss Plaintiff's interactions with her peers. *See Plaintiff's Exhibit 1 – Declaration of Ursula Thomas Cole.* **Disputing Defendants' Uncontroverted Fact Number 25.**

21.    Plaintiff performed her work accurately, timely and with precision. *Plaintiff's Exhibit 24 - Pay For Performance Evaluation, dated August 25, 2016; Plaintiff's Exhibit 16 (a) – Production Logs dated July 15, 2016 –February 3, 2017; Plaintiff's Exhibit 16(b) – Pay For Performance dated October 5, 2015.* **Disputing Defendants' Uncontroverted Fact Number 26.**

22.    Defendants encouraged employees to antagonize Plaintiff despite Plaintiff's previous complaints about their racist, offensive and derogatory comments and jokes.

5

*Plaintiff's Exhibit 26 – Cole Depo 20:1-22; 21:1-6.* **Disputing Defendants' Uncontroverted Fact Number 26.**

23.     Defendants harassed Plaintiff due to her complaints about mistreatment, unequal pay, discrimination and refusal to violate the Honeywell inspection guidelines. Plaintiff did not make inspection errors, however, her peer, Becky Wilson had missed inspections. *Plaintiff's Exhibit 27 - Cole Depo, 27:14-17; 27: 24-25; 28: 1-9.* **Disputing Defendants' Uncontroverted Fact Number 27.**

24.     In retaliation, Defendants fabricated this story concerning Plaintiff's poor performance and bad attitude. During Plaintiff's entire work history, PAC relied on Plaintiff to perform all rush orders.   If Plaintiff was missing an excessive amount of parts, then Defendants would not have relied upon her inspection detail and expertise. *Plaintiff's Exhibit 16(a) – Production Logs dated July 15, 2016 through Feb 3, 2017.* **Disputing Defendants' Uncontroverted Fact Number 27.**

25.     From June 30, 2016 until July 8, 2016. Plaintiff took vacation. Not one rush order was completed during her leave. Plaintiff performed all units upon her return. *Plaintiff's Exhibit 28 – Email from Kate Cosgrove to Stephanie Edens and Daniel Thorenson dated July 11, 2016.* **Disputing Defendants' Uncontroverted Fact Number 28.**

26.     On May 27, 2016, Defendant Thompson confronted Plaintiff in her office, pointed her finger in Plaintiff's face and screamed you are not in charge here.  Plaintiff told Thorenson that Defendant Thompson was "out of line." Plaintiff left the office. *Plaintiff's Exhibit 29 - Cole Depo 30:18-25; 31:23-25; 32:1-25.*   **Disputing Defendants' Uncontroverted Fact Number 29.**

27,     When presented with the PIP, Plaintiff refused to sign because the inspected units which were noted in the PIP were performed by a Caucasian Employee, Judy Voths.  *See*

*Plaintiff's Exhibit 12 – Performance Improvement Plan dated May 24, 2016; Defendant's Exhibit B - Declaration of Daniel Thorenson, Paragraph 34.* **Disputing Defendants' Uncontroverted Fact Number 30.**

28.     Defendants scrutinized Plaintiff's work more than any other PAC employee. They attempted to discredit Plaintiff's inspection and their attempts were purely vindictive and retaliatory. The reality was Plaintiff actually paid close attention to detail and demonstrated excellent workmanship. *Plaintiff's Exhibit 16(a)- Production Logs dated July 15, 2016 through February 3, 2017; Plaintiff's Exhibit 30 – Cole Depo, 23:11-25.* **Disputing Defendants' Uncontroverted Fact Number 31.**

29.     Defendants retaliated and harassed Plaintiff almost daily due to her complaints about racial harassment; unequal pay based on her performance and pay rate for similarly situated white male coworkers; and failure to follow Honeywell and FAA guidelines. *See Plaintiff's Exhibit 1 – Declaration of Ursula Thomas Cole, Plaintiff's Exhibit 34, Robertson Depo, 55: 7-24.* **Disputing Defendants' Uncontroverted Fact Number 33.**

30.     Plaintiff learned that Defendants permitted Bruce Green to make parts which Honeywell supplied. The Honeywell Component Manual did not authorize the use of PAC homemade or in-house parts. *Plaintiff's Exhibit 31 - Cole Depo, 21:1-25; 22:1-25; 23:1-25 and 24:1-25*; Plaintiff's *Exhibit 32 - Honeywell Component Maintenance Manual.* **Disputing Defendants' Uncontroverted Fact Number 31.**

31.     In her final evaluation, Defendants failed to cite any attitude problems. *See Plaintiff's Exhibit 24 - Pay for Performance Evaluation Form dated August 25, 2016.* **Disputing Defendants' Uncontroverted Fact Number 36.**

## ARGUMENTS AND AUTHORITIES

**I.     The clear Summary Judgment standards require denying Defendants Motion for Summary Judgment.**

Summary judgment is only appropriate if "there is no genuine dispute as to any material fact." *FED. R. CIV. P. 56.* Although intent and credibility are often critical issues in employment discrimination cases, no special summary judgment standard applies to such cases. In an employment discrimination case, as in any case, the Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party."   In other words, the court must construe the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in his favor.  *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003).

Summary judgment is a drastic remedy which is only appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).    The court's function is not to weigh the evidence but merely to determine if "there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

**II.    Plaintiff has met her burden to establish PAC discriminated against her because of her race.**

"Title VII is a broad remedial measure, designed to assure equality of employment opportunities." *Pullman-Standard v. Swint*, 456 U.S. 273, 276 (1982) (quotation omitted). The statute makes it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[T]he ordinary meaning of 'because of' is 'by reason of' or 'on account of,'" so "Title VII's 'because of' test incorporates the simple and traditional standard of but-for causation."

*Bostock v. Clayton City., Ga.*, 140 S. Ct. 1731, 1739 (2020) (quotations omitted). The statute also provides that a plaintiff may show discrimination by showing that his or her membership in a protected class was a "motivating factor" for the challenged employment practice.   § 2000e-2(m). "An employer violates Title VII when it intentionally fires an individual employee based in part on sex." *Bostock*, 140 S. Ct. at 1741.

Title VII also prohibits discrimination based on a combination of protected characteristics, such as "sex-plus-race" discrimination, i.e., discrimination targeted only at employees of a particular race and sex. See *Connecticut v. Teal,* 457 U.S. 440, 455 (1982) ("It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group."); see also *Hicks v. Gates Rubber Co*., 833 F.2d 1406, 1416-17 (10th Cir. 1987) (same).

The Act was designed to bar not only overt employment discrimination, "but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). "Thus, the Court has repeatedly held that a prima facie Title VII violation may be established by policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group." *Teamsters v. United States*, 431 U.S. 324, 349, 97 S.Ct. 1843, 1861, 52 L.Ed.2d 396 (1977) (hereinafter *Teamsters*).

To "discriminate against" a person, then, would seem to mean treating that individual worse than others who are similarly situated. See *Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53, 59, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). In so-called "disparate treatment" cases like today's, this Court has also held that the difference in treatment based on sex must be intentional. See, *e.g., Watson v. Fort Worth Bank & Trust*, 487 U.S.

977, 986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). So, taken together, an employer who intentionally treats a person worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII.

Plaintiff's genuine facts remaining in dispute clearly shows that there are sufficient issues that must be decided by the jury during a trial.

### III.   Plaintiff has satisfied her burden to establish Defendants retaliated against her.

The Court has previously noted the vexing nature of the distinction between questions of fact and questions of law. See *Baumgartner v. United States*, 322 U.S. 665, 671, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525 (1944).. For the reasons that follow, however, there is little doubt about the factual nature of the proximity of Plaintiff's execution of her rights and her treatment going from  bad to worse.

Treating issues of intent as factual matters for the trier of fact is commonplace. In *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 534, 99 S.Ct. 2971, 2977, 61 L.Ed.2d 720 (1979), the principal question was whether the defendants had intentionally maintained a racially segregated school system at a specified time in the past. The Court recognized that issue as essentially factual, subject to the clearly-erroneous rule. In *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the Court held that the principal criterion for identifying a gift under the applicable provision of the Internal Revenue Code was the intent or motive of the donor—"one that inquires what the basic reason for his conduct was in fact." *Id.*, at 286, 80 S.Ct., at 1197. Resolution of that issue determined the ultimate issue of whether a gift had been made. Both issues were held

to be questions of fact subject to the clearly-erroneous rule. In *United States v. Yellow Cab Co.*, 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949), an antitrust case, the Court referred to "[f]indings as to the design, motive and intent with which men act" as peculiarly factual issues for the trier of fact and therefore subject to appellate review under Rule 52.

Most notably, the statute prohibits employers from taking certain actions "because of " exercising protected rights.  The Supreme Court explained, "the ordinary meaning of 'because of' is 'by reason of' or 'on account of.' " *University of Tex. Southwestern Medical Center v. Nassar*, 570 U.S. 338, 350, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009); quotation altered). In the language of law, this means that Title VII's "because of " test incorporates the " 'simple' " and "traditional" standard of but-for causation. *Nassar*, 570 U.S. at 346, 360, 133 S.Ct. 2517. That form of causation is established whenever a particular outcome would not have happened "but for" the purported cause. See *Gross*, 557 U.S. at 176, 129 S.Ct. 2343. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.

When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as the plaintiff 's sex was one but-for cause of that decision, that is enough to trigger the law. See *ibid.*; *Nassar*, 570 U.S. at 350, 133 S.Ct. 2517.

### IV.   Genuine issues of material fact exist regarding Plaintiff's equal pay claim.

A review of Plaintiff's genuine material facts remaining in dispute illustrates a pattern and practice by Defendants of intentional actions that justify applying the three

year, rather than the two year, statute of limitations.  By Defendants own admission this lawsuit was filed pro se by Plaintiff within three years of termination.  Defendants attempt to win this issue by Summary Judgment must fail.

Defendants' substantive defenses are also without merit.  The Equal Pay Act prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).  To establish a prima facie case of pay discrimination under the EPA, a plaintiff must demonstrate that: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997).

Work is "substantially equal" for purposes of the EPA if it requires "equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1). This determination turns on the actual content of the job—not mere job descriptions or titles. *EEOC v. Cent. Kan. Med. Ctr.*, 705 F.2d 1270, 1273 (10th Cir. 1983), overruled on other grounds by *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 n.10 (1988). "What constitutes equal skill, equal effort, or equal responsibility cannot be precisely defined," but must take into consideration "the broad remedial purpose of the law." 29 C.F.R. § 1620.14.

Once a plaintiff has established a prima facie case of discrimination under the EPA, the defendant must show the pay disparity was justified by one of four permissible reasons: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than

sex." 29 U.S.C. § 206(d)(1); see also *Cnty. of Wash. v. Gunther*, 452 U.S. 161, 168 (1981) (describing these as the EPA's "four affirmative defenses"). To meet this burden, an employer must "submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity." *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006) (citation omitted). At the summary judgment stage, this means an employer must "prove at least one affirmative defense so clearly that no rational jury could find to the contrary." Id. at 1311 (citation omitted).

The evidence that Plaintiff was being paid less than her similarly situated male co-workers is uncontracted.  Arguments to the contrary should be disregarded as pretextual.

## V.   Subject matter jurisdiction allows consideration of Plaintiff's pay disparity claim.

In addition to requiring that a charge be written, signed, and verified, 29 C.F.R. § 1601.9, EEOC regulations state that a charge "should contain" particular information, *id.* at § 1601.12(a). But even if a charge fails to contain the specified information, it may still be sufficient, provided it is "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* at § 1601.12(b). Plaintiff's charge clearly satisfies these minimum requirements for the content of a charge, in addition to meeting the EEOC's formal requirements that a charge be written, signed, and verified, *id.* § 1601.9.

The purposes of exhaustion are: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir.1994), *abrogated on other grounds, Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir.2003).

13

The next step in determining whether a plaintiff has exhausted her administrative remedies is to determine the scope of the allegations raised in the EEOC charge because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie,* 414 F.3d at 1274; *see also Jones v. Sumser Ret. Vill.,* 209 F.3d 851, 853 (6th Cir.2000) ("[T]he facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim."). The Courts liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim. *See MacKenzie,* 414 F.3d at 1274 (construing liberally a plaintiff's charge of discrimination based on the ADA); *Foster v. Ruhrpumpen, Inc.,* 365 F.3d 1191, 1195 (10th Cir.2004).

Plaintiff's charge was sufficient to put Defendants on notice that she was claiming racial and sexual discrimination, retaliation, and the issues that would logically flow from discriminating and retaliating against an employee, including violating the Equal Pay Act. Accordingly, Defendants contentions must fail.

## CONCLUSION

There remain a number of issues involving genuine material facts that must be tried to a jury, not this Court. Defendants have failed to satisfy its burden that no reasonable jury could ever decide these issues in Plaintiff's favor. Therefore, Defendants Motion for Summary Judgment cannot be granted.

Respectfully submitted,

**KATRINA Y. ROBERTSON, LLC**


_/s/ *Katrina Y. Robertson*_____
Katrina Y. Robertson KSD 78226
1101 Walnut Street
Suite 203
Kansas City, Missouri 64106
OFFICE: (816) 885-4974
FACSIMILE: (816) 817-4964
EMAIL:  kyr@kyrobertsonlaw.com

and

**Banks Law LLC**

_/s/ Eric Kendall Banks_
Eric Kendall Banks KSD #78071
1824 Chouteau
St. Louis, Missouri 63103
314-583-7075
302-365-2789 (eFax)
ericbanks@bankslawllc.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2021, I caused the aforementioned document to be electronically filed with the Clerk of the Court using the CM/ECF filing system which will send a copy to counsel for all parties of record.

_/s/ Katrina Y. Robertson_