## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| URSULA S. THOMAS COLE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-1295-KHV |
| | ) | |
| PRECISION AVIATION CONTROLS, | ) | |
| JAMES ROBERTSON and SUSAN | ) | |
| THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Ursula S. Thomas Cole filed suit against Precision Aviation Controls ("PAC"), James Robertson and Susan Thompson, alleging that they maintained a racially hostile work environment and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Pretrial Order (Doc. #56) filed March 31, 2021 at 9. Plaintiff also alleges that in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII, defendants paid her less than white male and white female counterparts. Pretrial Order (Doc. #56) filed March 31, 2021 at 9. This matter comes before the Court on Defendants' Motion For Summary Judgment (Doc. #58) filed May 7, 2021. For reasons stated below, the Court sustains defendant's motion in part.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735,

740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.  See Liberty Lobby, 477 U.S. at 250–51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251–52.

**Factual Background**

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff.[1]

Plaintiff is an African-American female.  Precision Aviation Controls ("PAC") is a Federal Aviation Administration/European Aviation Safety Agency and ISO 9001 approved repair station in Independence, Kansas.  Its parent company, Precision Aviation Group, has headquarters in Atlanta, Georgia.  PAC provides highly specialized maintenance, repair and overhaul services to the aerospace and defense industry.  It has 27 employees at the Independence facility.  James

---

[1]        Plaintiff objects to defendants' presentation of their motion for summary judgment for the following reasons:

(1) [Defendants] have failed to follow Federal Civil Procedure Rule 56 ("Rule 56") because they have not identified each claim or defense, or the part of each claim or defense, on which summary judgment is sought.

(2) Defendants' motion violates Rule 56(c)(1)(A) because it fails to cite a material fact that cannot be genuinely disputed. Further, assuming the first five paragraphs of defendants' motion constitutes some type of material facts that cannot be contested, the motion fails to cite particular parts of materials in the record to support such a notion.

(3) Defendants bear the burden of demonstrating the absence of a genuine issue of material fact but fail to do so.

(4) Presumably, defendants have tried to "fix" their procedural and substantive defects by improperly attempting to incorporate a memorandum in support. Even if this was allowed, the memorandum while it contains some cites to the record fails to allege which citations are purportedly tied to material facts that cannot be genuinely disputed.

(5) Defendants' memorandum must be stricken because it fails to comply with D. Kan. Rule 56.1 (a), which requires a concise statement of material facts as to which they contend no genuine issue exists.

Plaintiff's objections are without merit.  Defendants complied with Rule 56: they stated that they are entitled to summary judgment on all of plaintiff's claims, they included a statement of facts that they contend are not genuinely disputed, each paragraph of the statement of facts is numbered and each paragraph refers to portions of the record upon which defendants rely.

Robertson is president of PAC.  Since 2015, Susan Thompson has served as Technical Services

Manager at PAC.

The parties do not agree that PAC is an "equal opportunity employer," but it maintains

written policies which prohibit discrimination, harassment and retaliation.  PAC policies also

provide avenues for employees to complain of harassment, discrimination or retaliation.  PAC

expressly prohibits retaliation for a good faith complaint of harassment.  On plaintiff's first day of

employment, PAC gave her a copy of its Handbook and Code of Conduct.

On September 10, 2015, PAC hired plaintiff as an H3 Specialized Team Member with the

specific duties of a Dimensional Inspector at the Independence facility.  Within months, PAC

promoted plaintiff to H5 Specialized Team Member, and she stayed in this position until her

termination on February 8, 2017.  Inspectors reviewed aerospace parts pursuant to applicable repair

manuals and used critical judgment to determine if a part of a component was compliant with

relevant inspection criteria.  Inspectors decided if a part had to be "scrapped" or could be

refurbished or polished.  The inspector then submitted the quote or paperwork to a Customer

Service Representative ("CSR").  CSRs reviewed the "scrapped" parts and quoted the replacement

parts.  Once the customer approved the quote, the unit was moved to the parts crib where

employees issued replacement parts and completed repairs in the machine shop.  Once the parts

arrived, the unit went to assembly.  If the unit could not be completed because of quality issues,

the assemblers returned the unit to the inspectors.

Stephanie Edens was plaintiff's Lead Inspector, and she assigned tasks and training for

plaintiff.  Plaintiff and Edens had a good relationship.  Daniel Thorenson was the Production

Manager and plaintiff's supervisor.  Within plaintiff's first 30 days of employment, PAC gave

plaintiff a favorable performance review, with ratings of "Meets Standard" and "Exceeds

Standard." In February of 2016, Thorenson, Thompson and Robertson recommended that plaintiff receive a raise of 50 cents per hour, but PAC did not actually provide plaintiff a raise. When plaintiff started the position, PAC paid her $14.00 per hour. PAC promised but refused to give her raises after 30, 60 and 90 days.

In early 2016, plaintiff started having issues in the inspection process. Aaron Garner, an assembler, told Thompson that on multiple occasions, plaintiff had inspected and passed parts on to assembly when she should have scrapped them. Garner told Thompson that when he asked plaintiff questions, she was rude in response, causing all the workers in assembly and disassembly to avoid plaintiff. Plaintiff maintains that she did excellent work, and that defendants depended on her to train other PAC employees, but she does not deny that Garner made these reports to Thompson.

Robertson called plaintiff "Spanky." PAC employees called plaintiff an "angry Obama fan," made negative references about Obama to plaintiff and harassed plaintiff by making fat jokes about her in front of others in the break room. Further, during a stand-up meeting, Robertson told PAC employees that he was glad Obama was no longer president. Plaintiff complained to Thorenson. In response to plaintiff's complaints, Thompson blamed her for the interactions and told her that she should not eat in the break room. Plaintiff claims that defendants encouraged employees to antagonize plaintiff despite her previous complaints about racist, offensive and derogatory comments and jokes. Plaintiff also claims that defendants encouraged her co-workers to complain about her and lie about her performance issues.

Garner and other assembly workers complained to Edens about plaintiff's work. They complained that plaintiff sent broken or bent parts to assembly or that plaintiff failed to send parts to assembly. Edens attempted to train plaintiff and correct her inspections. Plaintiff responds that

defendants falsely documented that "recent units had parts that were scrapped;" "that PAC employee Judy Voth inspected the units cited in the PIP;" that Thorenson claimed to have mistakenly included these units, yet he never retracted or corrected his mistake; and that the PIP was a "complete and utter fabrication."  These claims do not directly refute the fact that Edens received complaints about plaintiff's work and attempted to correct and counsel plaintiff.  Edens told Thorenson that plaintiff had a combative, defiant attitude.  Despite these complaints, plaintiff survived a reduction in force.  Defendants depended on plaintiff to train other employees and asked plaintiff to perform commercial side rush orders.

Employees reported plaintiff to Thorenson for telling offensive, "colorful" stories.[2]  The employees reported that plaintiff told stories of her cousins committing violent crimes.  Thorenson reported the complaints to Thompson, who handled human resources issues at the Independence facility.  On April 14, 2016, Robertson made a reference to pointing a gun at plaintiff's head.

By April 20, 2016, Thompson met with Thorenson and Edens to discuss how plaintiff addressed other employees who attempted to discuss problems with her at work.  Edens relayed a complaint wherein plaintiff had threatened to harm another employee, Devin Mendoza, if he continued asking her questions about things she had or had not done.  Thorenson and Thompson discussed plaintiff's performance and interactions with peers.  Plaintiff blamed others for her

---

[2]        Plaintiff claims that "Defendants encouraged employees to lie and accuse plaintiff of telling offensive stories on breaks and at lunch," and in support of that statement cites pages 85–88 of her own deposition testimony.  Memorandum In Opposition Exhibit Nos. 21–23 (Doc. #61-26–28) filed May 28, 2021.  The Court disregards plaintiff's claim that "Defendants encouraged employees to lie and accuse plaintiff of telling offensive stories on breaks and at lunch" because (1) the record suggests no theory on which plaintiff would have personal knowledge and be competent to testify to these facts; and (2) pages 85–88 of plaintiff's deposition do not support the proposition for which she cites them.

behavior and performance.  Thorenson and Thompson told her to go back to work and carefully consider how she interacted with co-workers, but did not discipline her.

After their meeting on April 20, 2016, Cindy Blakemore, a CSR, and Garner complained about plaintiff's inspections.  Garner again spoke with Thompson about plaintiff's performance and her attitude.  On May 17, 2016, Thompson sent Thorenson an email entitled "Ursula." Thompson asked Thorenson to inform her about any of plaintiff's performance or attitude issues. Thorenson forwarded the email to Edens.  The email stated that Garner had again complained about plaintiff, claiming that she did not clean flyweight pin holes and fully inspect levers, which were missing inserts when plaintiff sent them to Garner.  Cleaning flyweight pin holes was not part of plaintiff's job, however, and levers do not have inserts.   According to plaintiff's performance evaluation on August 25, 2016, she performed her work in an accurate and timely manner.  Memorandum In Opposition Exhibit No. 24 (Doc. #61-29) filed May 28, 2021.  Plaintiff knew that her peer, Becky Wilson, had missed inspections.

On May 24, 2016, Thorenson and Thompson again counseled plaintiff because she was missing an excessive number of parts that she should have identified at inspection.  On May 27, 2016, Thorenson and Thompson met with plaintiff to discuss a Personal Improvement Plan ("PIP") which Thorenson had created for her.  On the PIP, Thorenson included units inspected by another inspector, which created a misleading report of plaintiff's performance.   The meeting with Thorenson ended because Thompson yelled at plaintiff and told her that she was not in charge, and plaintiff was combative.  When Thorenson reconvened the meeting, he informed plaintiff that if she did not inspect all parts and components properly, a flight could fail and they would lose the aircraft.  Three months after Thorenson discussed the PIP with plaintiff, defendants rated her work with "meets standard" in every category.

On July 5, 2016, plaintiff filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC").   Plaintiff claims that after she filed her charges of discrimination, defendants scrutinized her work to discredit her inspections.  Thompson assigned her additional duties beyond her job description, told plaintiff not to speak with other employees and said she was "always watching."   Defendants invited plaintiff to Material Review Boards ("MRBs") if Thorenson inspected her parts.  At the MRBs, Thorenson, Thompson and Edens would determine as a team if the inspector had performed the inspection correctly, if additional parts should be scrapped or if the parts could be deemed serviceable and used according to manufacturer's overhaul manual and in compliance with applicable federal regulations.  Plaintiff refused to attend the MRBs.  On August 15, 2016, Thorenson, Thompson and Robertson recommended that plaintiff receive a raise of 75 cents per hour.  On August 29, 2016, in her final evaluation, defendants did not cite any attitude problems.

On January 11, 2017, plaintiff filed another charge of discrimination with the KHRC and EEOC alleging retaliation, discrimination and harassment based on race, sex and age.  On January 23, 2017, PAC asked plaintiff to go to MRBs for units which she had inspected.  Plaintiff refused.  Plaintiff also refused to sign a Corrective Action Response, even though all the other inspectors signed it.  On February 7, 2017, Thompson conducted a daily stand-up meeting with all PAC employees.  At the meeting, each division reported what units they had to work on that day.  When Thompson asked plaintiff which units inspectors had to work on that day, plaintiff commented, but Thompson could not hear her and asked her to repeat her answer.  Plaintiff raised her voice.  Thompson responded and said her behavior was rude.  Plaintiff then yelled her response, which upset Thompson.

Thompson and Robertson asked plaintiff to go to the conference room to discuss what had happened during the stand-up meeting.  When plaintiff went to the conference room, defendants verbally harassed her about why she continued to file discrimination complaints against them. They did not mention the stand-up meeting.  Plaintiff returned to the shop floor and went home. On February 8, 2017, Thompson called plaintiff and asked her to return to work.  Plaintiff obliged and met with Thompson, Robertson and April Owen, Vice President of Human Resources.  At the meeting, they terminated plaintiff's employment for unprofessional conduct and insubordination, based on her actions at the stand-up meeting the day before.  Defendants claim that they fired plaintiff because her conduct was contrary to PAC's Code of Conduct, which states that "Employees should always exercise good judgment when dealing with co-workers.  If a statement or action would make you uncomfortable if it were directed at you then don't do it."  Defendants also denied plaintiff her final paycheck and earned vacation time.

On March 28, 2017, plaintiff filed an amended charge of discrimination with the EEOC and KHRC.  KHRC issued No Probable Cause determinations.  On September 12, 2019, the EEOC issued right to sue letters.

On November 6, 2019, plaintiff filed suit in this Court.  Plaintiff alleges that (1) defendants "maintained a racially discriminatory working environment," (2) defendants retaliated by terminating her employment in response to charges of discrimination complaining of a racially discriminatory, hostile work environment, (3) in violation of Title VII, defendants paid her less than similarly situated white male and white female co-workers and (4) in violation of the Equal Pay Act, defendants paid her less than similarly situated white male and white female co-workers. Pretrial Order (Doc. #56) at 9.

## Analysis

Defendants seek summary judgment on all claims.[3]  Defendants assert that they are entitled to summary judgment on plaintiff's racially hostile work environment claim because plaintiff cannot establish a prima facie case.  Further, defendants assert that they are entitled to summary judgment on plaintiff's retaliation claim because (1) plaintiff cannot show a causal connection between any protected opposition and her termination and (2) defendants had a legitimate, non-retaliatory reason for terminating plaintiff's employment.  Defendants assert they are entitled to summary judgment on plaintiff's pay disparity claim under Title VII because (1) plaintiff did not exhaust her administrative remedies and (2) even if she did exhaust, she cannot establish a prima facie case.   Finally, defendants assert they are entitled to summary judgment on plaintiff's Equal Pay Act claim because (1) her claim is untimely; (2) this Court lacks subject matter jurisdiction over the claim; and (3) plaintiff cannot establish a prima facie case.

### I.      Hostile Working Environment In Violation Of Title VII

Plaintiff alleges that defendants subjected her to a racially hostile work environment. Defendants argue that they are entitled to summary judgment because plaintiff cannot establish a prima facie case.

To establish a prima facie case of racially hostile work environment, plaintiff must demonstrate that based on the totality of the circumstances, (1) she is a member of a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was racial or stemmed

---

[3]      Defendants also seek summary judgment on a race discrimination claim. Memorandum In Support of Precision Aviation Controls, James Robertson, and Susan Thompson's Motion For Summary Judgment, (Doc. #59) filed May 7, 2021 at 12.  However, the Pretrial Order only asserts a racial discrimination claim based on "the creation of a racially discriminatory working environment." Id. at 9.  Therefore, this issue is moot. Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims not included in pretrial order are waived).

from racial animus and (4) the harassment was pervasive or severe enough to alter the terms, conditions or privilege of employment.  Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007).  Defendants argue that they are entitled to summary judgment because plaintiff cannot show that the harassment was racial or stemmed from racial animus, or that it was pervasive or severe enough to alter the terms, conditions or privilege of her employment.

A showing of pervasiveness requires "more than a few isolated incidents of racial enmity." Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994) (citations and internal quotations omitted). Plaintiff must show a "steady barrage of opprobrious racial comments" and produce evidence that the workplace was permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment.  Id. (citation omitted); Bloomer v. U.P.S., Inc., 94 F. App'x 820, 825 (10th Cir. 2004) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).  Finally, the work environment must be both subjectively and objectively hostile or abusive.  Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015).

Plaintiff does not respond to defendants' argument that she has not shown that the harassment was racial or stemmed from racial animus.  In fact, her response seems targeted to a theory of liability which is absent from the pretrial order: that defendants terminated her employment on account of race.  The record, however, includes evidence that Robertson (the PAC president) called plaintiff "spanky" and "an angry Obama fan," that PAC employees made negative references to plaintiff about President Obama and that employees harassed plaintiff by making fat jokes about her in front of other employees.  Such evidence, while thin, creates a genuine issue of material fact whether the alleged harassment was racial or stemmed from racial animus.

Such evidence does not create a genuine issue of material fact whether the allegedly hostile working environment was pervasive or severe enough to alter the terms, conditions or privilege of plaintiff's employment.  On this record, plaintiff has cited insufficient evidence of a steady barrage of opprobrious racial comments.  The Court therefore sustains defendants' motion for summary judgment on this issue.

## II.    Retaliation in Violation Of Title VII

Defendants assert that they are entitled to summary judgment on plaintiff's retaliation claim because (1) plaintiff cannot show a causal connection between protected activity and adverse employment action and (2) defendants had a legitimate, non-retaliatory reason for terminating plaintiff's employment.  Plaintiff argues that defendants' stated reasons for termination are pretexts for retaliation.

To succeed on a retaliation claim under Title VII, plaintiff must show that defendants retaliated against her for engaging in protected activity.  Thomas v. Berry Plastics Corp., 803 F.3d 510, 514 (10th Cir. 2015).  To do so, plaintiff can either provide direct evidence of retaliation, or follow the McDonnell Douglas burden-shifting framework.  Id.  Under the McDonnell Douglas framework, plaintiff has the initial burden of establishing a prima facie case of retaliation.  Id.  To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected activity, (2) she suffered a material adverse action and (3) a causal connection exists between the protected activity and the adverse action.  Id.  Once plaintiff establishes a prima facie case, the burden shifts to defendants to articulate a legitimate, non-retaliatory reason for the adverse employment action.  Id.  If defendants do so, plaintiff must show that defendants' reason was pretextual.  Id.  Defendants do not dispute that plaintiff belongs to a protected class or that she suffered a material adverse action.

-12-

A.   Causal Connection

Defendants argue that plaintiff cannot establish a causal connection between the filing of her charges of discrimination with the EEOC and KHRC and the termination of her employment. Plaintiff alleges that defendants terminated her employment on February 8, 2017, because on July 5, 2016 and January 11, 2017, she had filed multiple charges of discrimination with the EEOC and KHRC and she had previously made verbal complaints directly to PAC.  To establish a sufficient causal connection, plaintiff must show that a desire to retaliate against her protected activity motivated defendant to commit the challenged conduct.  See Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202–03 (10th Cir. 2008).  Protected conduct that is very closely followed by adverse action may justify an inference of retaliatory motive.  Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir. 1996).  For example, the Tenth Circuit has held that a six-week period between adverse action and protected activity is close enough in time to establish causation, but that a three-month period is not.  See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999).

In response to defendants' motion, plaintiff states simply that, "So long as [her] sex was one but-for cause of [defendants'] decision, that is enough to trigger the law." Plaintiff's Opposing Memorandum In Support Of Response To Defendant's Motion For Summary Judgment (Doc. #61) at 11.  Even so, plaintiff has presented evidence that by February 8, 2017, defendants knew that plaintiff had filed charges of discrimination with the EEOC and KHRC on July 5, 2016 and January 11, 2017.  Some four weeks after plaintiff filed her second charge of discrimination, defendants terminated her employment.  Accordingly, plaintiff has presented evidence which creates an inference of a causal connection between the termination of her employment and the filling of formal charges of discrimination.  See Anderson, 181 F.3d at 1179 (termination occurring

within six weeks of protected activity alone sufficient to establish causation).  Defendants' motion for summary judgment on the issue of causation is therefore overruled.

B. <u>Pretext</u>

Defendants state that they terminated plaintiff's employment because she displayed unprofessional, insubordinate conduct in violation of the PAC Code of Conduct.  Once defendants proffer legitimate, non-retaliatory reasons for their actions, the burden shifts back to plaintiff to show that defendants' reasons are merely pretexts for retaliation.  <u>Foster v. Mtn. Coal Co., LLC</u>, 830 F.3d 1178, 1186 (10th Cir. 2016).  At this final step of the <u>McDonnell Douglas</u> framework, the presumption of retaliation created by plaintiff's prima facie case "simply drops out of the picture."  <u>Swackhammer v. Sprint/United Mgmt. Co.</u>, 493 F.3d 1160, 1167 (10th Cir. 2007) (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510 (1993)).  Plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted . . . reasons." <u>Id.</u> (quotation omitted).

Defendants state that they terminated plaintiff's employment because she displayed unprofessional, insubordinate conduct in violation of the PAC Code of Conduct.  Again, plaintiff's response does not mention pretext.  She does suggest that to disguise their retaliatory motive, defendants cited her behavior on February 7, 2017 as reason for her termination, took her into a meeting the day before her termination and verbally harassed her about her charges of discrimination.  This evidence, along with plaintiff's strong evidence of causation, raises a genuine issue of material fact whether defendant's stated reasons for her termination were a pretext for retaliation.  Defendants are not entitled to summary judgment on plaintiff's retaliation claim.

-14-

III.    **Pay Disparity In Violation Of Title VII, 42 U.S.C. § 2000e <u>et seq.</u>**

The Pretrial Order contains no factual allegations that defendants discriminated against plaintiff by paying her a lower wage than white or male employees for equal work of equal skill, effort or responsibility.  The Pretrial Order nonetheless seeks to recover for "pay disparity under . . . Title VII concerning PAC's refusal of equal pay for equal work."  <u>Pretrial Order</u> (Doc. #56) at 9.  Defendant asserts that (1) plaintiff did not exhaust administrative remedies as to her Title VII pay disparity claim and (2) even if she exhausted her administrative remedies, she cannot establish a prima facie case.  The Pretrial Order does not allege exhaustion of any equal pay claim.  Plaintiff argues that her charge of "discrimination, harassment, hostile work environment and retaliation" was sufficient to put defendants on notice that she was asserting a pay disparity claim.

Under Title VII, if a plaintiff fails to timely file an EEOC charge regarding each discrete employment incident or adverse action, defendants may raise an affirmative defense of failure to exhaust.  <u>Lincoln v. BNSF Ry. Co.</u>, 900 F.3d 1166, 1185 (10th Cir. 2018).  To exhaust, plaintiff generally must present her claims to the EEOC or authorized state agency (here, the KHRC) and receive a right-to-sue letter based on that charge.  <u>Id.</u> at 1181.  In Kansas, plaintiff must file an administrative charge within 300 days of the alleged discriminatory action.  <u>See</u> 42 U.S.C. § 2000e-5(e)(1).  The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b).  A discrimination charge is liberally construed but is limited to the scope of investigation that can reasonably be expected to follow the charge of discrimination submitted.  <u>Jones v. U.P.S., Inc.</u>, 502 F.3d 1176, 1186 (10th Cir. 2007).  The charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.  <u>Id</u>.  The charge tells the EEOC or KHRC what to investigate, provides the opportunity to conciliate

the claim and gives the charged party notice of the alleged violation.  See <u>Martinez v. Potter</u>, 347 F.3d 1208, 1211 (10th Cir. 2003).  The timeliness requirement is like a statute of limitations, <u>i.e.</u> subject to waiver, estoppel and equitable tolling.  <u>Zipes v. Trans World Airlines</u>, 455 U.S. 385, 393 (1982).

Plaintiff filed her EEOC and KHRC charges within 300 days of defendants' payments, but her charges do not include any allegations related to the subject of wage disparity.  Plaintiff argues that her "charge was sufficient to put Defendants on notice that she was claiming racial and sexual discrimination, retaliation, and the issues that would logically flow from discriminating and retaliating against an employee, including violating the Equal Pay Act."  <u>Plaintiff's Opposing Memorandum In Support Of Response To Defendants' Motion For Summary Judgment</u> (Doc. #61) filed May 28, 2021.[4]  Her charge states, "On February 8, 2017, I was terminated and humiliated in front of my co-workers, and was not given my raises.  Furthermore, I was not paid my vacation time that I still have available."  While charges of discrimination are liberally construed, plaintiff's EEOC and KHRC charges do not mention a wage disparity, only that defendants did not pay her vacation time or recommended raises.  Moreover, plaintiff has not explained how the scope of the EEOC or KHRC investigations could reasonably be expected to include an investigation of wage disparities between similarly situated male co-workers, female co-workers and herself.  Because plaintiff has not raised a genuine issue of material fact whether she exhausted administrative remedies on her wage disparity claim under Title VII, the Court sustains defendant's motion for summary judgment as to that claim.

---

[4]       Plaintiff refers to the Equal Pay Act, but the Court assumes she intended to reference the Title VII violations.

**IV.     Pay Disparity In Violation Of The Equal Pay Act of 1963, 29 U.S.C. § 206(d)**

As with plaintiff's Title VII pay disparity claim, the Pretrial Order contains no factual allegations that would support a theory of liability under the Equal Pay Act.  Pretrial Order (Doc. #56) at 2–5.  Plaintiff nonetheless seeks recovery under the Equal Pay Act of 1963 for racial discrimination in respect to her compensation.  Defendants assert that plaintiff's Equal Pay Act claim is time-barred or, in the alternative, without merit.  Plaintiff argues that (1) because she has alleged a willful violation of the EPA, the statute of limitations is three years and (2) defendants paid her less than similarly situated white co-workers.

The Equal Pay Act provides that "[n]o employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).  To establish a prima facie case under the Equal Pay Act, plaintiff has the burden of proving that (1) she performed work which was substantially equal to that of male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the employee performed the work were basically the same; and (3) male employees were paid more under such circumstances.  Tidwell v. Ft. Howard Corp., 989 F.2d 406, 409 (10th Cir. 1993).

Once plaintiff establishes a prima facie case under the Equal Pay Act, the burden shifts to defendants to establish that a pay differential was premised on a factor other than sex.  Id.  To do this, defendants must show that the disparity is the result of (1) a seniority system; (2) a merit

system; (3) a system which measures earnings by quantity or quality of production; or (4) a factor other than sex.  29 U.S.C. § 206(d)(1); Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1364 (10th Cir. 1997).

In the Pretrial Order, plaintiff claims "Pay disparity under Equal Pay Act of 1963 . . . concerning PAC's refusal of equal pay for equal work on jobs which similarly situated white male and white female employees performed and discriminating against Plaintiff with respect to her compensation."  (Doc. #56) at 9.  The Pretrial Order does not mention wage discrimination based on sex and the factual background does not recite evidence of male co-workers with similar jobs, allege that defendants paid any male co-workers more than plaintiff or assert that defendants gave male co-workers raises in similar circumstances.  Because plaintiff makes no attempt to argue or provide evidence to support a prima facie case, she does not raise a genuine issue of material fact on this claim.  Accordingly, defendants are entitled to summary judgment on plaintiff's claim under the Equal Pay Act.

## V.      Individual Liability Under Title VII – ORDER TO SHOW CAUSE

To be liable, a defendant must be an "employer" under Title VII.  Under Title VII, individual supervisors cannot be held personally liable and personal capacity suits against fellow employees are inappropriate.  Fuller v. Dept. of Children and Families, 804 F. App'x 601, 605 (10th Cir. 2020) (citing Sauers v. Salt Lake Cty., 1 F.3d 1122 (10th Cir. 1993) and Haynes v. Williams, 88 F.3d 898, 899 (10th Cir. 1996)).

On or before 5:00 p.m. on November 4, 2021, plaintiff shall show cause in writing why Robertson and Thompson should not be dismissed as defendants as to plaintiff's retaliation claim under Title VII.   On or before November 15, 2021, defendants may file a response.

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion For Summary Judgment</u> (Doc. #58) filed May 7, 2021 is **SUSTAINED in part**. The Court sustains defendants' motion as to plaintiff's racially hostile work environment claim and her Title VII and Equal Pay Act claims for disparity of pay. Defendants' motion is otherwise overruled. The sole remaining issue is defendant's liability for retaliation in violation of Title VII.

**IT IS FURTHER ORDERED** that on or before 5:00 p.m. on November 4, 2021, plaintiff shall show cause in writing why Robertson and Thompson should not be dismissed as defendants as to her retaliation claim under Title VII. On or before November 15, 2021, defendants may file a response.

Dated this 21st day of October, 2021 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge